Tedford P. LEWIS (Plaintiff), Respondent,

v.

Sterling KENNEDY (Defendant), Appellant.

No. 29767.

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1958.

Rehearing Denied Feb. 13, 1958.

Ackerman & Schiller, Paxton H. Ackerman, Gideon H. Schiller, Clayton, for appellant.

Roessel & Boxdorfer, Keith M. Brownell, St. Louis, for respondent.

HOUSER, Commissioner.

Tedford P. Lewis (landowner, subdivider and contractor) sued Sterling Kennedy (civil engineer and surveyor) in two counts for damages for breach of contract and negligence in the platting of certain lots

in High Grove Subdivision in the City of Webster Groves, and the staking out of building lines thereon. Kennedy filed an answer consisting of a general denial and a plea of contributory negligence and a counterclaim in which he alleged that at Lewis' special instance and request Kennedy rendered professional services in connection with the subdivision of the reasonable value of $920, demand and failure to pay. No answer to the counterclaim was filed.

Trial before judge and jury resulted in a verdict for Kennedy both on petition and counterclaim. Judgment thereon was rendered for Kennedy in the sum of $920 plus interest in the total sum of $1,205.20. Lewis filed a motion for a new trial for error in the giving of Instruction No. 3 by which the court directed the jury to enter a verdict in favor of Kennedy on Kennedy's counterclaim. Kennedy has appealed from the order sustaining the motion for a new trial.

Appellant urges that he was entitled to a directed verdict on his counterclaim under the rule in Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282; Gardner v. Linwedel, Mo.App., 192 S.W.2d 613, and United Farm Agency v. Howald, Mo.App., 263 S.W.2d 889; that there was no dispute as to the facts relating to respondent's liability for engineering services; that respondent by his own testimony supported and established appellant's claim for relief, thereby making it a question of law to be decided by the court.

Respondents asserts that there *was* a dispute on the facts and that respondent did not by his own testimony establish appellant's claim; that the main issue was whether the work was done properly and in a workmanlike manner or improperly and to respondent's great damage; that respondent's claim under his petition and his defense to the counterclaim (failure to properly stake out the houses in question) constituted a denial of appellant's claim; that an essential to recovery on the theory of quantum meruit is a jury finding

that the work was done in a workmanlike manner; that where a party asserts the affirmative of a proposition and proof of it is necessary to sustain his point the truth and weight of his evidence, though uncontradicted, is for the jury.

■■ We find no error in the action of the trial court. A counterclaimant is entitled to a directed verdict where there is no conflict in the evidence and the adverse party's own evidence establishes the counterclaim, so that nothing is left for the jury to determine, Rogers v. Thompson, Gardner v. Linwedel, and United Farm Agency v. Howald, supra, but where conflicting evidence raises an issue for the jury as to a material fact the direction of a verdict is improper. 71 C.J., Work and Labor, § 129.

In his counterclaim appellant sought to recover compensation for surveying and engineering for the subdivision, boundary survey, topographical map, three plats (survey plat, preliminary plat and final plat), sewer plans, staking sewers, footing detail for Lot 6, and spot surveys on seven lots. Appellant introduced evidence that these services were rendered. Respondent expressly conceded on cross-examination that all of these services were rendered; that he received value *(except for those services relating to the placement or positioning of the houses on Lots 1 and 2)* and that he had paid nothing therefor. As to the placement or positioning of the houses on said lots, however, the parties were in direct and irreconcilable conflict. The whole lawsuit revolved around the central question: whose fault was it that the houses on Lots 1 and 2 were projected over the building line (too close to Rock Hill Road) in violation of the zoning ordinance? The gist of respondent's petition is that appellant (with full knowledge of the zoning ordinances which provided for a 30-foot property line, and of the policy of the city requiring the public dedication of a 10-foot strip in all new subdivisions abutting Rock Hill Road) in staking out the sites of the houses on Lots 1 and 2 placed the

stakes 10 feet closer to Rock Hill Road than the city ordinances allowed as a consequence of which respondent was required to move back the house on Lot 1, thus incurring additional expenses for excavation, carpentry, concrete, foundation and grading work, and was required to spend additional sums on the house on Lot 2 and for counsel fees in proceedings before the board of adjustment. Respondent's testimony supported his petition in this respect. Both parties agree that the original plat prepared by appellant called for a 30-foot building line and contained a shaded portion 10 feet wide labeled "dedication" (thus conforming to zoning, etc. requirements) and that in final form as signed and approved by respondent and filed with the city the word "dedication" was erased and the word "easement" substituted. Respondent testified that this change was made at the suggestion of *appellant*. Appellant testified positively to the contrary, claiming that this change was made at *respondent's* suggestion. Appellant reiterated that his original plat made proper provision for the dedication to the public of a 10-foot strip along the front line of the subdivision in accordance with city policy and zoning ordinances and testified that the original plat was changed (thus resulting in the staking out of the houses 10 feet closer to the road) at *respondent's* suggestion in order to effect economies in construction costs. Respondent testified that he left the engineering details to appellant and that the situation of each individual house on each lot was done entirely by appellant's calculations. Respondent in his deposition, read at the trial, testified that he was personally present when Bert Zuroweste, one of appellant's employees, put stakes in the ground for the location of the house on Lot 1; that Lot 6 was staked out first and Lot 2 was staked out before Lot 1. Respondent indicated that he himself had nothing to do with the precise location of the foundations. Respondent testified that the plat was not before respondent at the time Lot 1 was staked out; that respondent did not pace off the distances or personally make any measurements with reference to boundaries or street during the staking out of Lot 1. Appellant denied that he or his employees actually staked out the foundations for the houses on Lots 1 and 2. He testified positively, however, that his men ran a survey on each foundation showing the location of the proposed house on each lot and that this was done before the foundations were poured, i. e. while the ground was still vacant. This was one of the engineering and surveying services for which appellant was seeking compensation.

 Respondent's Instruction No. 1 directed a verdict for respondent upon a finding that appellant "failed to properly stake out on the ground the proposed sites for houses on Lots 1 and 2 in violation of the 30 foot building line requirement of zoning ordinances * * * and that plaintiff was thereby damaged by being compelled to move the house on Lot 1 back and necessitated additional expenses on the house on Lot 2." By appellant's Instruction No. 3 the jury was "directed to enter your verdict in favor of defendant on defendant's counterclaim * * *." No. 3 was peremptory and all-inclusive in its direction of a verdict on the counterclaim. It covered every item without exception. Before appellant was entitled to a directed verdict on every item of his counterclaim on the ground that respondent's testimony established appellant's counterclaim it would have been necessary for respondent's testimony to have supported and established every such item. There could be no dispute about respondent's liability to pay for every item of service for which appellant was making claim. But that was not the situation. There was a dispute. There was a direct conflict in the evidence relating to the positioning of the houses on those lots. The claims and defenses of the respective parties clearly reveal their antagonistic positions on this material issue. Respondent's entire case from beginning to end was a negation of liability to pay for the positioning and placement of the

houses on these lots. That is the essence of respondent's claim for damages and is the crux of the whole case. One element of the counterclaim, therefore, was not established by respondent's testimony: that respondent received value for engineering services in running the surveys for the location of the houses on Lots 1 and 2. This was a direct issue of fact for the jury to resolve. Respondent's concessions on cross-examination above noted did not entitle appellant to a directed verdict on that issue.

■ In brief, Instruction No. 1 submitted to the jury the question whether appellant failed to stake out the houses properly and directed a verdict for respondent if the jury found that he failed to properly stake. Instruction No. 3 in effect withdrew from the jury the question of the propriety of appellant's surveys of the foundations on Lots 1 and 2 by peremptorily directing a verdict for appellant (presumably upon all items of engineering services for which he sought compensation, including the running of foundation surveys). No. 3 eliminated the question whether the placement or positioning of the foundations for the houses on Lots 1 and 2 was done properly or improperly. The two instructions were inconsistent and confusing. The circuit court recognized its error and took timely action to correct it.

The order of the trial court sustaining respondent's motion for a new trial should be affirmed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The order of the trial court sustaining respondent's motion for a new trial is, accordingly, affirmed.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.